# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| BRUCE L. WILSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:20-CV-01604-PLC |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

### Memorandum and Order

Plaintiff Bruce Wilson seeks review of the decision of Defendant Social Security Acting Commissioner Kilolo Kijakazi denying his application for Disability Insurance Benefits (DIB) under the Social Security Act. For the reasons set forth below, the Court affirms the Commissioner's decision.

**I.      Background and Procedural History**

In August 2018, Plaintiff, who was born November 1985, filed an application for DIB, alleging he was disabled as of February 20, 2012 as a result of various physical and mental impairments. (Tr. 83, 131, 133) The Social Security Administration (SSA) denied Plaintiff's claim, and he filed a timely request for a hearing before an administrative law judge (ALJ). (Tr. 83, 89-90)

---

[1] Kilolo Kijakazi become the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 205(g) of the Social Security Act, 42 U.S.C. §405(g).

The SSA granted Plaintiff's request for review, and an ALJ conducted a hearing in November 2019. (Tr. 33) In a decision dated February 7, 2020, the ALJ applied the five-step evaluation process set forth in 20 C.F.R. § 404.1520 and determined that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from February 20, 2012, the alleged onset date, through December 31, 2019, the date last insured[.]" (Tr. 13-26)

In his decision, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the thoracic and lumbar spine, history of right wrist fracture, migraines, PTSD, major depressive disorder, unspecified personality disorder, and oppositional defiant disorder. (Tr. 16) Additionally, the ALJ determined that Plaintiff had the non-severe impairments of eosinophilic esophagitis, sleep apnea, and history of hiatal hernia and ampullary adenoma. (Id.) Based on his review of the medical records, medical opinion evidence, and testimony, the ALJ determined that, during the relevant time period, Plaintiff had the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) except [Plaintiff] can occasionally climb ladders, ropes and scaffolds, stoop, kneel, crouch and crawl.  He should avoid concentrated exposure to hazards, such as unprotected heights and dangerous moving machinery.  He can understand and remember simple instructions, and can attend to and carry out routine and repetitive tasks.  He can also occasionally interact with the public and coworkers.

(Tr. 18) The ALJ further found, based on the testimony of a vocational expert, that Plaintiff was unable to perform past relevant work, but he could perform other jobs that existed in significant numbers in the national economy, such as bakery worker, laundry folder, and small-products assembler. (Tr. 25-26)

Plaintiff filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review.  (Tr. 128-29, 1)  Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision. Sims v. Apfel, 530 U.S. 103, 106-07 (2000).

## II.     Standard of Review

A court must affirm an ALJ's decision if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  Chesser v. Berryhill, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)).  A court must consider "both evidence that supports and evidence that detracts from the ALJ's determination, [but it] may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome."  Id. (quoting Posch, 201 F.3d at 1012) (internal quotation marks omitted).

A court does not "reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence."  Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)).  Therefore, a court must affirm the ALJ's decision if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]"  Wright v. Colvin, 789 F.3d 847, 852 (8th Cir. 2015) (quoting Perkins v. Astrue, 648 F.3d 892, 897 (8th Cir. 2011)).

## III.    Discussion

Plaintiff argues that substantial evidence did not support the ALJ's decision at step five of the sequential evaluation that Plaintiff could perform jobs that existed in significant numbers in the national economy. [ECF No. 19] First, Plaintiff contends the ALJ erred because the jobs of bakery worker, laundry folder, and small-products assembler required "work[ing] around moving machinery," which directly contradicted the RFC's "prohibition against concentrated exposures to hazards such as .... dangerous moving machinery." [Id. at 3] Second, Plaintiff asserts that the

vocational expert's (VE) testimony did not constitute substantial evidence that Plaintiff could perform other jobs in the national economy because the ALJ's hypothetical question to the VE contradicted the RFC determination. Defendant responds that the ALJ did not err at step five because substantial evidence supported the finding that Plaintiff could perform other work that existed in significant numbers in the national economy. [ECF No. 22]

To support a finding at step five that a claimant is not disabled there must be "evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [his] residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2). Work exists within the national economy "when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant is] able to meet." 20 C.F.R. § 404.1566(b). "A vocational expert's testimony based on a properly phrased hypothetical question constitutes substantial evidence." Galloway v. Kijakazi, 46 F.4th 686, 689 (8th Cir. 2022) (quotation omitted).

At the hearing, the ALJ asked the VE to consider a hypothetical individual with Plaintiff's age, education, and work experience who was limited to "a range of light work" with the following limitations:

> no more than occasional climbing of ladders, ropes or scaffolds, stooping, kneeling, crouching or crawling. The individual must avoid concentrated exposure to hazards such as unprotected heights and dangerous moving machinery. The individual could understand or remember simple instructions and attend to and carry out routine or repetitive tasks and can more than occasionally interact with the public or coworkers.

(Tr. 59) The VE testified that this person could not perform Plaintiff's past relevant work, but he or she could perform other jobs in the light work category, including bakery worker, laundry folder, or laundry folder. (Id.)

4

In his decision, the ALJ included in the RFC determination the following limitations: "[h]e should avoid concentrated exposure to hazards, such as … dangerous moving machinery" and he can "occasionally interact with the public and coworkers." (Tr. 18)  The ALJ considered the VE's testimony that a person with Plaintiff's RFC could perform the jobs of bakery worker, laundry folder, and small-products assembler, and determined that the VE's testimony was "consistent with the information contained in the Dictionary of Occupational Titles." (Tr. 26) Based on the VE's testimony, the ALJ concluded that Plaintiff was "capable of making a successful adjustment to other work that existed in significant numbers in the national economy" and was therefore not disabled. (Id.)

### A. Alleged Conflict Between the RFC and the Jobs Identified by the ALJ

Plaintiff claims that the VE's testimony did not constitute substantial evidence because it conflicted with the DOT's job descriptions. [ECF No. 19] More specifically, he argues that the RFC precluded concentrated exposure to hazards such as dangerous moving machinery, but the jobs the VE identified required work around moving machinery.  He further asserts that the VE failed to explain the alleged inconsistency as required by SSR 00-4p. In response, the Commissioner argues that Plaintiff "cites no authority, other than his own assertion, to support his claim that these jobs required exposure to dangerous, moving machinery." [ECF No. 22 at 5]

As previously stated, "an ALJ may not rely on a vocational expert's testimony about the requirements of a job if an 'apparent unresolved conflict' exists between that testimony and the job's description in the [DOT]." Thomas v. Berryhill, 881 F.3d 672, 677 (8th Cir. 2018) (quoting Moore v. Colvin, 769 F.3d 987, 989-90 (8th Cir. 2014)). When vocational evidence provided by a VE "is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE … evidence to support a determination or decision that the individual is or is

5

not disabled." SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). If the VE's testimony "appears to conflict with the job requirements set forth in the relevant DOT listings and the ALJ did not resolve the conflict, 'the vocational expert's testimony is not substantial evidence to support a denial of benefits.'" Galloway, 46 F.4th at 689 (quoting Stanton v. Comm'r, Soc. Sec. Admin, 899 F.3d 555, 557 (8th Cir. 2018)).

Here, the VE testified that Plaintiff had the RFC to perform the jobs of bakery worker (DOT 524.687-018), laundry folder (DOT 369.687-018), and small-products assembler (DOT 706.684-022). The DOT defines bakery worker, or "racker," as follows: "Loads wire racks with cookies, crackers, and wafers preparatory to their being dipped in icing: Removes wire rack from overhead trolley conveyor and places products on rack. Lifts and hooks rack to conveyor. May impale products on pins of wire rack[.]" DICOT 524.687-018, 1991 WL 674400 (4th ed. 1991). The DOT definition of laundry folder provides:

> Folds fluff-dried or pressed laundry, such as shirts, towels, uniforms, and jackets: Shakes out, smooths, folds, sorts, and stacks wash according to identification tags. Inspects pressed laundry for holes or tears, and separates defective articles for transfer to repair department. Folds laundry, preparatory to wrapping, for delivery to customer. Folds pressed shirts around cardboard forms and inserts assembly in plastic bags. May attach missing buttons to articles, using button-sewing-machine or button-attaching machine. May unload tumbler. May turn socks, match pairs, and tie socks into bundles.

DICOT 369.687-018, 1991 WL 673072 (4th ed. 1991).  Finally, the DOT defines small-products assembler, stating:

> Performs any combination of following repetitive tasks on assembly line to mass produce small products, such as ball bearings, automobile door locking units, speedometers, condensers, distributors, ignition coils, drafting table subassemblies, or carburetors: Positions parts in specified relationship to each other, using hands, tweezers, or tongs. Bolts, screws, clips, cements, or otherwise fastens parts together by hand or using handtools or portable powered tools. Frequently works at bench as member of assembly group assembling one or two specific parts and passing unit to another worker. Loads and unloads previously setup machines, such as arbor presses, drill presses, taps, spot-

> welding machines, riveting machines, milling machines, or broaches, to perform fastening, force fitting, or light metal-cutting operation on assembly line.

DICOT 706.684-022, 1991 WL 679050 (4th ed. 1991).

Plaintiff claims that the VE's testimony that an individual with Plaintiff's RFC (including a limitation on "concentrated exposure to … dangerous moving machinery") could perform those jobs conflicted with the DOT because all three jobs required work either with or around moving machinery. Plaintiff points out that, according to the DOT:  (1) bakery workers use an overhead trolley conveyor; (2) laundry folders may use button-sewing machines or tumblers; and (3) small-products assemblers load and unload previously setup machines, such as arbor presses, drill presses, and spot-welding machines.

While the occupational definitions of the three jobs identified by the VE reference machines, it is not clear, based on those definitions, that the jobs require concentrated exposure to dangerous moving machinery. Nothing in the DOT or its companion publication the Selected Characteristics of Occupations (SCO)[2] suggest that the jobs require concentrated or prolonged exposure to dangerous moving machinery.[3]  To the contrary, all three definitions state:  "Moving Mech. Parts:  Not Present – Activity or condition does not exist[.]"  DOT 524.687-018, DOT

---

[2] See Moore v. Colvin, 769 F.3d 987, 989, n. 2 (8th Cir. 2014) ("Social Security Ruling 00-4p dictates that '[i]n making disability determinations, we rely primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy.'").

[3] Plaintiff asserts in his reply brief that conveyor systems used by bakery workers are necessarily dangerous machines because they are subject to Office of Safety and Health Administration (OSHA) standards. [ECF No. 27] Even if the Court were to accept this proposition, Plaintiff cites no authority suggesting that the position of bakery worker requires "concentrated exposure" to the moving parts of that machinery.  Furthermore, the other two jobs identified by the ALJ did not involve conveyor belts. Even just one appropriate job listing is sufficient to support an ALJ's decision. See Swedberg v. Saul, 991 F.3d 902, 906 (8th Cir. 2021) ("An ALJ may rely on a vocational expert's testimony as long as some of the identified jobs satisfy the claimant's residual functional capacity."); Weiler v. Apfel, 179 F.3d 1107, 1111 (8th Cir. 1999) (one appropriate listing constituted substantial evidence).

369.687-018, DOT 706.684-022.  See e.g., Feger v. Saul, No. 4:19-CV-339 DGK, 2020 WL 2544426, at *4 (W.D. Mo. May 19, 2020) (no inconsistency in VE's testimony that person with RFC limiting exposure to machinery with moving mechanical parts could perform the jobs of small-products assembler, hand packager, and subassembler); Pemberton v. Saul, No. 18-324-CV-W-LMC, 2020 WL 1536542, at *5 (W.D. Mo. Mar. 31, 2020) (no error in the ALJ's step-five finding that the plaintiff could perform positions requiring the use of power tools and machines even though the RFC limited exposure to dangerous machinery); Rhodes v. Saul, No. 4:18-CV-986 NKL, 2019 WL 5618084, at *8 (W.D. Mo. Oct. 31, 2019) (Although the jobs of small-products assembler and electrical accessory assembler "may include exposure to some machinery, they do not include exposure to the 'hazards … of machinery,' and are thus not in conflict with the RFC.")

To the extent Plaintiff relies on Thomas, that case is inapposite because an "apparent unresolved conflicted" existed between the VE's testimony and the DOT's job description. 881 F.3d 678-79. In this case, there is no unresolved conflict because the DOT expressly states no exposure to moving mechanical parts is required for the jobs identified in the VE's testimony and ALJ's decision.  The Court therefore finds that the VE's testimony did not conflict with the DOT, and substantial evidence supported the ALJ's finding at step five that Plaintiff was able to perform jobs that existed in significant numbers in the national economy.

**B.  ALJ's Hypothetical Question**

Plaintiff argues that the ALJ's "hypothetical posed to the vocational expert was not properly phrased," therefore, "it cannot be said that the vocational expert's testimony constituted substantial evidence[.]"  [ECF No. 19 at 7]  Whereas the hypothetical question described a person who could "*more than occasionally* interact with the public or coworkers," the RFC stated that

Plaintiff could "*occasionally* interact with the public and coworkers." The Commissioner acknowledges the limitation as written in the ALJ's RFC finding differs from the hypothetical question as it appears in the transcript[4], but she argues that the error does was harmless. [ECF No. 22]

"Testimony from a vocational expert constitutes substantial evidence only when based on a properly phrased hypothetical question." Swedberg v. Saul, 991 F.3d 902, 906 (8th Cir. 2021) (quoting Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)). "An error in posing the hypothetical question may be harmless, however, if there is no conflict with the VE's testimony and the DOT or [if] there is no indication that the ALJ would have decided the case differently." Meyerpeter v. Astrue, 902 F. Supp. 2d 1219, 1232 (E.D. Mo. 2012) (quoted in Bechtel v. Kijakazi, No. 4:20-CV-1335 MTS, 2022 WL 970870, at *5 (E.D. Mo. Mar. 30, 2022)). For example, "when an ALJ errs by failing to include certain limitations in the residual functional capacity, such error is harmless where the jobs identified by the ALJ encompass those limitations." Tristan J. v. Kijakazi, No. 21-CV-248 TNL, 2022 WL 3701450, at *5 (D. Minn. Aug. 26, 2022) (collecting cases).

Based on DOT and SCO, the occupations identified by the ALJ at step five do not appear to require more than superficial or incidental contact with others. DOT 524.687-018 (bakery worker), 369.687-018 (laundry folder), DOT 706.684-022 (small-products assembler); see also Barnett v. Saul, No. 4:19-CV-2673 SEP, 2021 WL 1222111, at *8 (E.D. Mo. Mar. 31, 2021). In fact, the DOT states that social interaction is "Not Significant" for these jobs, which "is consistent with limitations to occasional, brief and superficial contact with co-workers, supervisors, and the public." Alie v. Berryhill, No. 4:16 CV 1353 JMB, 2017 WL 2572287, at *16 (E.D. Mo. June 14,

---

[4] The Commissioner suggests, "[i]t is possible … at the hearing, the ALJ did in fact say '*no* more than occasionally interact with the public or with co-workers' or something to that effect and the transcript was simply transcribed incorrectly[.]" [ECF No. 22 at 8 n.2]

9

2017). Additionally, each of the identified jobs has a "people rating" of eight[5] meaning it requires the lowest level of interpersonal functioning, or "taking instructions-helping."[6] DOT, Parts of the Occupational Definition, 1991 WL 645965 (4th ed. 1991); see also Missey v. Saul, No. 4:20-CV-701 ERW, 2021 WL 2665918, at *5 (E.D. Mo. June 29, 2021); Barnett, 2021 WL 1222111, at *8; Troy L. M. v. Kijakazi, No. 21-CV-199 TNL, 2022 WL 4540107, at *16 (D. Minn. Sep. 28, 2022).

The Court finds no conflict between the ALJ's RFC determination limiting Plaintiff to occasional interaction with the public and coworkers and his finding that Plaintiff could perform the three identified jobs. The Court therefore finds that any error in the ALJ's hypothetical question to the VE was harmless. Moreover, it is Plaintiff's burden to show that any error was not harmless, and Plaintiff failed to meet that burden. See Byes v. Astrue, 687 F.3d 913, 917 (8th Cir. 2012). Plaintiff provided no "indication that the ALJ would have decided differently" if the ALJ's hypothetical question had specified only occasional interaction with the public or coworker. See id.

### IV.     Conclusion

For the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence on the record as a whole. Accordingly,

---

[5] The fifth digit of each occupational code in the DOT reflects the level of interaction with people necessary for that particular job. See DOT, Parts of the Occupational Definition, 1991 WL 645965; Missey v. Saul, 2021 WL 2665918, at *5 (E.D. Mo. 2021); Barnett, 2021 WL 1222111, at *8.

[6] "Taking Instructions – Helping" is a category of social interaction associated with a specific job and is defined as: "Attending to the work assignment instructions or orders of supervisor. (No immediate response required unless clarification of instructions or orders is needed.) Helping applies to 'non-learning' helpers." DOT, Appendix B, 1991 WL 688701 (4th ed. 1991).

**IT IS HEREBY ORDERED** that the final decision of Defendant denying Social Security benefits to Plaintiff is **AFFIRMED**.

A separate judgment in accordance with this Memorandum and Order is entered this date.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of November, 2022